UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | NO.: 3:23-CR-00115-KAC-DCP |
| ) | |
| ) | |
| DAN ROARK ) | |

### SENTENCING MEMORANDUM

The Defendant, Dan Roark, by and through counsel submits this Sentencing Memorandum for this Honorable Court's consideration in Mr. Roark's' sentencing hearing. In support of which, the Accused would show as follows:

I. **Introduction/Procedural History/Factual Background**

Mr. Roark was originally charged via Criminal Complaint on November 6, 2023, with production of child pornography in violation of 18 U.S.C. §2251 (a) and (e). [Doc. 3]. On November 15, 2023, an Indictment issued charging Mr. Roark with a total of four counts in violation of 18. U.S.C. §2251(a) and (e), 18. U.S.C. §2252A(a)(2), and 18 U.S.C. §2252A(a)(5)(B). [Doc. 14].

On August 14, 2024, an Amended Plea Agreement was filed pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). [Doc. 35] On August 26, 2024, a change of plea hearing was conducted in which Mr. Roark pled guilty to counts one and three of the Indictment, charging him with Conspiracy to Sexually Exploit a Child in violation of 18 U.S.C. §2251(a) and (e) and Receipt of Child Pornography in violation of 18 U.S.C. §2252(A)(a)(2). Mr. Roark is presently scheduled for sentencing on February 13, 2025.

II. **Sentencing Guideline Analysis**

Mr. Roark entered into an Amended Plea Agreement in which he pled guilty to counts one and three of the Indictment, charging him with Conspiracy to Sexually Exploit a Child in violation of 18 U.S.C. §2251(a) and (e) and Receipt of Child Pornography in violation of 18 U.S.C. §2252(A)(a)(2). [Doc. 35]. The Plea agreement was entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) in which the parties agreed that a sentence within the guideline range of

262 to 327 months imprisonment is the appropriate disposition of this case. [Doc. 35 at 5]. Additionally, within the Amended Plea Agreement the United States agreed to cap its request for sentencing at 300 months while Mr. Roark agreed not to argue for a sentence below 262 months. *Id*. Accordingly, should the Court accept the plea agreement, the applicable range of sentencing in this case is 262 to 300 months.

A Presentence Investigation Report was completed by United States Probation Officer Tara Grey on December 19, 2024. [Doc. 38]. The parties each noted factual discrepancies within the PSR and requested additional time to file objections to the PSR. [Doc. 39]. The Court granted that request and extended the deadline to submit objections to January 14, 2024. [Doc. 40]. The parties have each communicated with the United States Office of Probation regarding various factual issues as set out within the PSR and Mr. Roark anticipates that some revisions will be made, however they have not been filed to date. Additionally, Mr. Roark filed a Notice of Objections to the PSR on January 14, 2025 raising a number of objections, however noting that if the Court were to accept the amended plea agreement the objections would not affect the applicable sentencing range set out in the agreement. [Doc. 42].

The Presentence Investigation Report filed in this matter calculates the same adjusted offense level for count one and count three, setting out for each count a base offense level of 32 pursuant to U.S.S.G. §2G2.1(a), applying upward adjustments to each count of four levels pursuant to §2G2.1(b)(1)(A); two levels pursuant to §2G2.1(b)(2)(A); two levels pursuant to §2G2.1(b)(6)(B); two levels pursuant to §3A1.1(b)(1); and two levels pursuant to §3C1.1, resulting in an adjusted offense level of 44 for both counts. [Doc. 38 at 10-12]. Additionally, the PSR increased the offense level by two levels pursuant to §3D1.4, resulting in a combined adjusted offense level of 46. [*Id.* at 12]. The PSR then applied an enhancement pursuant to §4B1.1 of five levels, resulting in an offense level of 51. [*Id.* at 13.] Finally, the PSR then applied a total of three level decrease for acceptance of responsibility pursuant to §3E1.1(a) and (b), resulting in a total offense level of 48 which is adjusted to the maximum offense level of 43. [*Id.* at 13].

The PSR correctly notes that Mr. Roark's criminal history score is zero in this case, placing him in criminal history category I. [Doc. 38 at 13]. Based upon the Office of Probation's

calculation and Mr. Roark's criminal history category, his advisory guideline range absent the plea agreement is life. [*Id.* at 16].

Mr. Roark submitted a Notice of Objections in this matter specifically objecting to a number of facts within the PSR, objecting to the application of the vulnerable victim enhancement in this case pursuant to §3A1.1(b)(1), and objecting to the application for obstruction of justice in this case pursuant to §3C1.1. [Doc. 42].

The United States submitted a response to those objections taking "no position" related to the vulnerable victim enhancement and arguing that the obstruction of justice enhancement is correctly applied. [Doc. 43]. Were the Court to grant Mr. Roark's objections to the PSR, the total offense level would be level 44 which would then be adjusted to the maximum offense level of 43. As noted, if the objections were granted, it would not affect the negotiated sentencing range set out within the amended plea agreement in this case should the Court accept the agreement.

### III. Dan Roark's Personal Background and Character

Dan Roark was born in Barbourville, Kentucky on June 11, 1976. Mr. Roark was one of three children born to Nancy and Raymond Majors. Mr. Roark never had a relationship with his biological father during his lifetime. Ms. Majors was a severe alcoholic, often taking her children with her to the bar with her, and ultimately Mr. Roark and his siblings were removed from her custody when he was a child due to severe neglect, lack of food, and poor living conditions. Unfortunately, Mr. Roark also experienced significant struggles within the foster care system including additional abuse. Mr. Roark and his brother were fostered and ultimately adopted by Ray and Carlon Roark. The Roarks ultimately adopted a total of eleven foster care children, some of whom had disabilities. Mr. Roark described the conditions in the home as physically abusive and described his foster parents having sex in front of the children and walking around the home nude or in undergarments frequently. Mr. Roark was also molested by Carlon Roark's brother, his adoptive uncle, during his childhood.

Mr. Roark graduated from Little Miami High School in Miami, Ohio in 1994. When Mr. Roark turned 18, he joined the Army, at least in part as an escape from his home life. His older brother also joined the army within days of Mr. Roark.

Mr. Roark was enlisted from 1994 to 2004, and experienced significant success during his military career. Mr. Roark received multiple commendations, promotions, and awards for exceptional service during his time in the United States Army. Numerous military records and commendations are attached as Exhibit 1.

Mr. Roark was stationed at several locations during his military career, including Germany. While stationed in Germany, he met his wife Susen Roark, and they were married in 2000. While in the Army and stationed in Germany, Mr. Roark was struck during training with a 25mm round in the shoulder which caused a number of health issues. This injury resulted in partial disability status designation from the Department of Veteran's Affairs.

Following his honorable discharge from the United States Army, Mr. Roark sought employment in law enforcement. Mr. Roark worked in corrections for the Knox County Sheriff's Office for several years and in 2007 he was hired by the Knoxville Police Department. Mr. Roark was employed at the Knoxville Police Department for 16 years up until his arrest for the instant offense. Mr. Roark's career began as a patrol officer, and he received multiple promotions and commendations within those ranks. Mr. Roark also sought and received his bachelor's degree during his employment at the Knoxville Police Department. Mr. Roark eventually transferred to an administrative position within the Knoxville Police Department technical services unit and was involved in the distribution of body camera video and audio requests at the time he was arrested. Throughout his career with the Knoxville Police Department Mr. Roark showed his commitment to the community and was nominated for Officer of the Month at least six times. Records from his Knoxville Police Department Personnel file are attached as Exhibit 2.

Dan Roark is described by those who know him best as someone who cares for others and has always believed in serving his community. Robert Roark, Dan's older brother, describes his brother as a man who is loving and caring; who despite the struggles they endured during their childhood has devoted his life to public service and the community. *See* Exhibit 3. Robert Roark asks that the Court act mercifully in imposing a sentence, describing the conduct in this case as far from the character of the man he has known his whole life. *See* Exhibit 3.

## IV. Sentencing Factors to Consider

Courts are tasked with considering a number of factors when reaching a sentence. First, the Court must examine the appropriate guidelines and calculate the applicable range of punishment for the offense at issue. While the Sentencing Guidelines are advisory in nature, calculation of the appropriate advisory guideline range is still the initial analysis before the Court. *See United States v. Booker*, 543 U.S. 220 (2005). The *Booker* Court specifically noted in rejecting mandatory guideline ranges that courts should impose sentences in light of the overall "reasonableness" as applied to the individual defendant in question. *Id.* In addition to considering reasonableness, courts are directed to "tailor the sentence in light of other statutory concerns" including, but not limited to, the factors enunciated for departures within the guidelines and bases for variance pursuant to 18 U.S.C. §3553. In fact, courts may consider any information that is not otherwise prohibited within the Guidelines when assessing what is a reasonable sentence. *See* U.S.S.G. §1B1.4.

Following the calculation of the appropriate guideline level and ranges, the sentencing court should look to any potential grounds for downward departure set out within the guidelines that may be applicable in a given case. Next, the court must examine the applicability of any grounds for an additional variance from the calculated guideline range in the instant case. Such grounds include any of the factors set out within 18 U.S.C. § 3553(a), but are not limited to those; rather, the Court should determine the appropriate sentence for a defendant based upon the totality of the circumstances surrounding the case and under the auspice of reasonableness. Included in this mandate is the instruction that the court "shall impose a sentence sufficient, *but not greater than necessary*" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a) (emphasis added). Finally, after assessing the appropriate advisory range of punishment and addressing all of the enunciated factors for both departure and variance, the sentencing court may examine any additional factors in the case at issue that may be applicable or that would make the case one "outside the heartland" of cases that are contemplated by the specific section of the guidelines.

In the instant case, the parties have negotiated a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

Plea agreements entered into under this provision "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply." Fed. R. Crim. P. 11(c)(1)(C). Additionally, "such a recommendation or request binds the court once the court accepts the plea agreement." *Id*. A Court may accept or reject the agreement, however if the agreement is rejected the defendant may withdraw his guilty plea. Fed. R. Crim. P. 11(c)(5)(B).

In considering whether to accept an agreement that includes a specific sentence or range, the Court should accept the agreement when the Court is satisfied that the agreed sentence is either within the applicable guideline range or if the sentence is outside the applicable range for "justifiable reasons." U.S.S.G. §6B1.2(c). As outlined more fully below, there are justifiable reasons that support the proposed sentencing range in this case, considering Mr. Roark's personal history, the unique facts in this case, and other factors including the Court's mandate to impose sentences in light of their overall reasonableness as recognized by the United States Supreme Court in *United States v. Booker*. *United States v. Booker*, 543 U.S. 220 (2005).

Quite frankly, a guideline term of imprisonment for "life" or "600 months" as noted within the PSR in this case cannot be considered reasonable. [Doc. 38 at 16]. Such a sentence is excessive and allows for no individualized considerations in imposing a sentence that is "sufficient but not greater than necessary" to achieve the goals of sentencing. *See* 18 U.S.C. §3553.

The negotiated plea agreement, however, takes into account the facts and circumstances of this case, the applicable sentencing guidelines, the factors relevant to sentencing set out in 18 U.S.C. §3553, and the Court's mandate to consider defendants as individuals, and is reasonable in this case. The agreement was reached after discovery review and extensive negotiations between Mr. Roark and the United States related to the facts in this case, the anticipated proof, and the anticipated guideline range. Accordingly, Mr. Roark would ask the Court to accept the amended plea agreement in this matter, and ultimately impose a sentence of 262 months, followed by lifetime supervision in this case. Additionally, while any restitution is mandatory and appropriate if requested, Mr. Roark does not have the ability to satisfy a fine in this matter.

V.  **Analysis of 18 U.S.C. §3553 Factors that support the Sentencing Range Outlined in the Plea Agreement.**

    a.  **Nature and Circumstances of the Offense-18 U.S.C. §3553(a)(1)**

Mr. Roark agrees with the facts set out within the Amended Plea Agreement filed in this case and contained within paragraphs16-21 of the PSR. [Doc. 35 and Doc. 38 at 5-6]. Mr. Roark agrees that from 2019 to October 2023, he conspired with Misty Qualls to solicit the production of illicit images depicting a minor which were sent to him via text messages. [Doc. 35 at 3-4]. The nature and the circumstances of the offense are extremely serious. As a result, Mr. Roark has accepted responsibility for his conduct and entered a guilty plea in this case. It is significant though, to note that Mr. Roark did not personally have contact with the minor in this case, differentiating his case from others with similar enhancements. Accordingly, the nature and circumstances of the offense are adequately addressed by the agreed sentencing range set out within the amended plea agreement.

    b.  **History and Characteristics of the Defendant-18 U.S.C. §3553(a)(1)**

As set out more fully above, Dan Roark experienced a very difficult childhood filled with substance abuse by his mother, neglect, and physical and sexual abuse. Despite that, Mr. Roark has sought to serve his community and his country. Mr. Roark's life of service speaks volumes about his true character and highlights how the conduct at issue represents a significant departure from an otherwise law abiding lifestyle. His life of service is not mentioned to negate any conduct at issue in this case, should be strongly considered. His life up to the offense is question lends necessary context to the offense conduct, a low likelihood of reoffending, and increases the deterrent value that will result from his sentence. Mr. Roark's background of service and law-abiding life prior to 2019 provides justifiable reasons for the negotiated range set out in the amended plea agreement in this case.

    c.  **Need for the Sentence Imposed-18 U.S.C. §3553(a)(2)**

Next, courts are directed to analyze the need for the sentence imposed in a given case to promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public when necessary. 18 U.S.C. §3553(a)(2)(A-C). Respectfully, the imposition

of a term of imprisonment of more than two decades followed by supervision and placement on the sex offender registry each more than fully satisfy these needs.

The substantial prison term in this case is followed by other material consequences and supervision provide just punishment and promote respect for the law by sending a severe message related to production offenses. Further, any deterrence, both general and specific, is more than adequately addressed. Mr. Roark will be, at the earliest, in his late sixties when he is eligible to be released into the community in this matter. Further, upon his release, he will be subject to supervised release, special conditions of release for sex offenders, and will be subject to the restrictive conditions of the Sex Offender Registration and Notification Act. The United States certainly contemplated each of the factors set out above in reaching the amended plea agreement in this matter and has noted that a sentence at the top of the sentencing range within the agreement of 300 will provide just punishment for the offense. [Doc. 44 at 5]. Mr. Roark would argue that the factors set out above support a sentence of more than two decades, followed by supervision for life, which more than appropriately serves each of the goals set out above.

### d. Pertinent Policy Statements-18 U.S.C. §3553(a)(5)

A Court may also consider any pertinent policy statements in determining an appropriate sentence pursuant to 18 U.S.C. §3553(a)(5). Here, the Court must determine if there are justifiable reasons for the sentencing range within the amended plea agreement but also determine the appropriate sentence within that range. Mr. Roark would argue that consideration of policy statements and the factors set out in 18 U.S.C. §3553 were relevant to the parties in negotiating the plea agreement and that would support the sentencing range requested in this case.

The Court may consider policy statement §5H1.11-Military, Civic, Charitable, or Public Service; Employment-Related Contributions; Record of Prior Good Works in the instant case. Pursuant to U.S.S.G. § 5H1.11, "[m]ilitary service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." In the instant case, the Court is presented with a defendant who dedicated a decade of his life to the service of his country. *See* Exhibit 1. Further, during his time

in the military he received multiple promotions, commendations, and honors. Mr. Roark was then injured during his service to our country resulting in partial disability status. However, Mr. Roark did not let that end his dedication to serving others. Mr. Roark then devoted 16 years to the service of the Knoxville Community through his employment at the Knoxville Police Department. Again, that service was beyond the status quo, again resulting in multiple commendations, promotions, and recognition of his service to others. *See* Exhibit 2. Mr. Roark's exceptional record of military, civic, and public service provides justifiable reasons for the negotiated range in this case, and for imposition of a sentence of 262 months followed by lifetime supervision.

**VI. Conclusion**

Dan Roark is a 48-year-old individual who is before the Court for sentencing in this case requesting the Court accept his plea agreement and sentence him to more than two decades in prison. Mr. Roark has no prior criminal history outside the instant offense, has maintained gainful and admirable employment his entire life including military service and law enforcement employment, and has no history of substance abuse. Mr. Roark has fully accepted responsibility for his conduct and is exceptionally remorseful and ashamed by his actions. Following his plea Mr. Roark will be sentenced to a significant period of incarceration, likely lifetime supervision, and required compliance with the strict monitoring of the Sex Offender Registration and Notification Act. Mr. Roark would argue that there are justifiable reasons for the Court to accept the plea agreement in this matter and impose a sentence of 262 months imprisonment, followed by lifetime supervision. A sentence as outlined in the amended plea agreement and as discussed above is sufficient, but not greater than necessary to satisfy the purposes of sentencing, while also considering Mr. Roark as an individual and honoring the mandate of reasonableness required for all sentences.

RESPECTFULLY SUBMITTED this the 30 January 2025.

/s/ Gregory P. Isaacs
GREGORY P. ISAACS, BPR #013282
THE ISAACS LAW FIRM, PLLC
618 South Gay Street, Suite 300
Post Office Box 2448
Knoxville, Tennessee 37901-2448

865.673.4953/(fax) 673.4950
www.isaacslawfirm.com
gpi@isaacslawfirm.com

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing pleading was filed electronically and has been served on counsel of record, pursuant to the Federal Rules of Criminal Procedure, by the U.S.D.C. electronic filing system.

DATED this 30 January 2025.

/s/ Gregory P. Isaacs